**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jessie GONZALEZ–MARES,
Defendant-Appellant.**

**C.A. No. 84–5026.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1984.

Resubmitted Nov. 1, 1984 *.

Decided Feb. 7, 1985.

As Amended April 23, 1985.

---

* This case was originally argued before Judge Ely, who died on October 9, 1984. Submission was vacated and Judge Tang was drawn to replace Judge Ely.

Edward C. Weiner, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Craig E. Weinerman, San Diego, Cal., for defendant-appellant.

Before GOODWIN and TANG, Circuit Judges, and RYMER,** District Judge.

RYMER, District Judge:

Jessie Gonzalez-Mares appeals her conviction for obstruction of justice [18 U.S.C. § 1503] and making false statements to a United States Probation Officer [18 U.S.C. § 1001]. Appellant committed these acts in connection with an earlier criminal prosecution for illegal transportation of aliens.

## FACTS

On August 2, 1983, United States Border Patrol Agents arrested Gonzalez-Mares in El Centro, California, and charged her with illegal transportation of aliens [8 U.S.C. § 1324] and aiding and abetting illegal entry of aliens [8 U.S.C. § 1325 and 18 U.S.C. § 2]. During the morning of August 3, 1983, appellant met with counsel and signed a form entitled "Consent to Proceed Before United States Magistrate in a Petty Offense Case." [1]

While Gonzalez-Mares met with counsel, United States Probation Officer Stanley Winters screened the petty offense cases and determined that the appellant was a likely candidate to participate in the oral presentence report procedure. Winters then sought to interview the appellant in order to prepare an oral presentence report which would be presented to the magistrate immediately following appellant's guilty plea. Winters asked and received permission from Gonzalez-Mares' attorney to interview her. Winters did not advise her counsel that he could be present at the interview.

Winters told Gonzalez-Mares that she appeared to be a good candidate for probation and asked whether she had any objections

** Honorable Pamela Ann Rymer, United States District Judge, Central District of California, sitting by designation.

1. Apparently under a standard plea bargaining process in El Centro, a defendant charged with a felony (illegal transportation of aliens) and a misdemeanor (aiding and abetting illegal entry of aliens) may be permitted to plead guilty to the misdemeanor before the United States Magistrate in exchange for the government's dismissal of the felony charge. However, the form signed by appellant does not inform the accused that he has agreed to plead guilty to a misdemeanor or any offense or that the felony count will be dismissed. The form signed by Gonzalez-Mares and her attorney states that she waives her right to trial judgment and sentencing before a United States district judge and that she consents to trial judgment and sentencing before a United States magistrate. The form also states that the defendant waives her right to have at least 30 days to prepare for trial.

to being interviewed. Appellant stated that she had none. Winters did not advise Gonzalez-Mares of her *Miranda* rights prior to the interview. He did tell her that if she made a false statement to him she could be prosecuted or suffer other consequences if she was already on probation. In direct response to Winters' questions, appellant denied ever having used other names in the past and denied having a prior criminal record.

Following the interview with Winters, appellant appeared before the magistrate and pled guilty to a misdemeanor. At the magistrate's request, Winters presented an oral presentence report. He advised the court that the appellant had no juvenile or adult record and recommended that the appellant be placed on probation. Before sentencing, the magistrate asked appellant, who was under oath, if she had ever been in trouble before. She responded negatively. Appellant was placed on unsupervised probation.

The following day, Winters did a thorough record check and discovered that the appellant had provided false information regarding her prior record and prior use of different names. Winters determined that the appellant was on parole under a different name.

Gonzalez-Mares was indicted for obstructing the due administration of justice by providing false and inaccurate information both to the United States Probation Officer and to the court in an effort to improperly influence the court to grant her probation in violation of 18 U.S.C. § 1503.[2] The second count of the indictment charged appellant with making false statements to the probation officer in violation of 18 U.S.C. § 1001[3] by stating that she had never been arrested for other than traffic offenses and that she never used aliases. Following a court trial, the district court found appellant guilty on both counts of the indictment. On appeal, appellant urges that the district court erred in denying her pretrial motion to suppress evidence of her responses to the probation officer and her motion for acquittal on both counts of the indictment.

## DISCUSSION

A. *The district court did not err in denying appellant's motion to suppress statements made to a probation officer at a pre-plea interview.*

Appellant contends that the pre-plea interview conducted by the probation officer constituted a custodial interrogation and that she was entitled to the protections offered by a *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government con-

---

**2.** 18 U.S.C. § 1503 provides:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magis-

trate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

**3.** 18 U.S.C. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

cedes that she was in custody but asserts that the interview does not amount to "interrogation."

Our cases have held that the determination of whether interrogation occurred is essentially factual and is reviewed under the clearly erroneous standard *United States v. Crisco,* 725 F.2d 1228 (9th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); *United States v. Booth,* 669 F.2d 1231, 1237–38 (9th Cir.1981). We note, however, that this court's en banc decision in *United States v. McConney,* 728 F.2d 1195 (9th Cir.1984), casts doubt upon the application of the clearly erroneous standard in these cases. We need not reach this issue in the present case because the district court did not err under either standard.

■ Not every question posed in a custodial setting is equivalent to "interrogation" requiring *Miranda* warnings. *United States v. Crisco, supra,* 725 F.2d at 1230; *United States v. Mata-Abundiz,* 717 F.2d 1277, 1279 (9th Cir.1983); *United States v. Booth, supra,* 669 F.2d at 1237. The test is whether "under all of the circumstances involved in a given case, the questions are 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Booth, supra,* 669 F.2d at 1237; *United States v. Mata-Abundiz, supra,* 717 F.2d at 1279–80. The test is objective. *Id.* at 1280. The subjective intent of the agent is relevant but not conclusive. *Id.* The relationship of the question asked to the crime suspected is highly relevant. *Id.*

■ The questions asked by the probation officer—whether appellant ever used any other names and whether she had a prior criminal record—were not directly related to the facts of the crime with which appellant was then charged. *Compare United States v. Mata-Abundiz, supra,* 717 F.2d 1277 (9th Cir.1983) (INS investigator's question about defendant's citizenship directly related to crime (possession of firearm by illegal alien) with which defendant

was later charged; investigator had reason to suspect defendant of committing crime charged because defendant in custody on state charges for carrying concealed weapon) *with United States v. Booth, supra,* 669 F.2d 1231, 1238 (police officer's question to suspect about any prior arrests is interrogation). Moreover, unlike the typical *Miranda* case, appellant's responses are not being used to help prove prior criminal activity. In this case, the false responses themselves constitute the prohibited conduct.

In denying the motion to suppress, the district court relied on *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982), which held that "a routine presentence interview of an individual convicted of a noncapital federal offense is not, ... a critical stage of the proceeding in which counsel's presence or advice, is necessary to protect the defendant's right to a fair trial." 692 F.2d at 578. The *Baumann* court rejected the argument that a convicted defendant is entitled to *Miranda* warnings and the presence of counsel at a presentence interview because the policies that support *Miranda v. Arizona* would not be served in the context of post-conviction interviews where the information is given to the district judge for sentencing purposes only.

Appellant attempts to distinguish *Baumann* on the ground that Baumann was interviewed *after* his conviction in contrast to this case where appellant was interviewed *prior* to her guilty plea. However, that distinction is not convincing on the facts of this case because the questions asked were not likely to elicit incriminatory responses.

■ Appellant argues that the probation officer's questions were intended to discover whether she was already on probation or parole and that admitting the truth might cause the government to revoke her parole. However, in general, a probationer is not entitled to invoke the privilege against self-incrimination in response to questions about his probation status. *See e.g., Minnesota v. Murphy,* —— U.S. ——, 104 S.Ct. 1136, 1147 n. 7, 79 L.Ed.2d 409

(1984) (regardless of whether answer to question to probationer about violation of terms of parole is compelled by threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings). The threat of probation proceedings are not considered criminal proceedings for purposes of invoking the Fifth Amendment privilege. *Id.*

Appellant also contends that the probation officer would have communicated a truthful response to his questions to the government for the purpose of influencing the prosecutor to withdraw the plea offer and prosecute appellant on the felony. Although the probation officer testified that he would have communicated such information, the testimony is sheer speculation. It is also a matter of speculation on how the government would have responded to receiving such information.[4]

■ In this case, appellant's responses were only used for purposes of sentencing. Thus, the case is controlled by *Baumann.* False answers to proper questions asked *after* conviction would ordinarily be admissible in a prosecution for giving false statements.[5] The fact that the questions were asked prior to the plea should not change the result where the answers were not used to incriminate the appellant on the underlying offense (illegal transportation of aliens) and where potential use of the

responses to affect appellant's parole status is not inconsistent with the Fifth and Sixth Amendments.

B. *The district court did not err in denying appellant's motion for acquittal on the charge of obstruction of justice.*

■ Appellant argues that at the time she spoke to the probation officer judicial proceedings were not pending. Generally, the obstruction of a government investigation not connected with an on-going judicial or quasi-judicial proceeding does not fall within the scope of § 1503. *United States v. Brown,* 688 F.2d 596, 598 (9th Cir.1982); *United States v. Ryan,* 455 F.2d 728, 733 (9th Cir.1971). Whether a judicial proceeding was pending at the relevant time is a question of law and subject to *de novo* review. *United States v. McConney,* 728 F.2d 1195, 1200–02 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Appellant was arrested on August 2, 1983 at approximately 2:00 p.m. She remained in custody at El Centro jail, and in the morning of August 3, 1983, the United States Marshal transported her to El Centro Magistrate Court. During the morning she met with an attorney who later that afternoon was appointed by the Court to represent her. During the consultation with her attorney, she signed the consent form agreeing to waive her right to trial and sentencing before a district

---

4. The record suggests that the pre-plea presentence interview is not altogether free from coercion. *Cf. Baumann v. United States* (post-conviction interview does not raise concerns about coercion). The appellant was told that she was a good candidate for probation which may induce her to make responses that will please her interrogator. [R.T. at 23.] Indeed, the process of approaching the defendant prior to her plea, advising her that she is a good candidate for probation, and then questioning her prior to the time she makes her plea creates a set of incentives to a defendant to speak where she otherwise might not do so. In addition, the record shows that the probation officer might have used the appellant's responses for purposes other than making his presentence report, including giving information to the government.

The Court recognizes that a system of pre-plea interviews by a probation officer raises a host of problems and may be subject to abuses. The

facts of this case do not raise such problems as appellant's responses were used in a limited manner—to prepare the oral presentence report. They were not used against her on the underlying charge of illegal transportation of aliens.

5. *After conviction,* the danger of introducing responses to a probation officer's questions at the trial for the underlying offense is virtually non-existent. The only use for such responses would be for revocation of parole or probation based on prior convictions or discovery of new or additional offenses not yet charged. The former use is not incriminatory under the Fifth Amendment; the latter use must be evaluated on a case by case basis to see if the question was likely to elicit an incriminatory response. *See Jones v. Cardwell,* 686 F.2d 754 (9th Cir.1982) (probation officer sought to elicit admissions of prior (uncharged) criminal conduct).

court judge. Sometime after signing the consent form, appellant, with her attorney's knowledge and consent but outside his presence, was interviewed by the probation officer after he told appellant that she was a candidate for an oral presentence report.

This is not a case where appellant was the subject of a government agency's investigation or search. *See United States v. Metcalf,* 435 F.2d 754 (9th Cir.1970); *United States v. Brown, supra.* Appellant contends that there was no evidence that a complaint had actually been filed at the time she was interviewed.[6] However, even assuming that her contention is true and the complaint was filed after the interview, a judicial proceeding was pending for purposes of § 1503. The probation officer's presentence interview, which presupposes that charges have been filed, was unrelated to the decision to file the complaint. Therefore, the fact that the complaint was filed minutes after the interview instead of minutes before the interview would appear to be immaterial. The district court correctly concluded that a judicial proceeding was pending at the time she made false statements to the probation officer.

▇▇ Appellant next argues that the false statements made to the magistrate at the time of sentencing cannot by themselves constitute obstruction of justice under § 1503. The issue of whether false statements made under oath to a United States magistrate constitutes obstruction of justice is a question of law subject to *de novo* review. *United States v. McConney, supra,* 728 F.2d 1195.

Appellant was convicted under the so-called "Omnibus Clause" of 18 U.S.C. § 1503 for "corruptly endeavor[ing] to influence, obstruct or impede the due administration of justice...." The "Omnibus Clause" includes a variety of acts which obstruct, impede or corruptly influence the due administration of justice. *United States v. Rasheed,* 663 F.2d 843 (9th Cir.

1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982).

False statements made under oath may, under some circumstances, constitute obstruction of justice under § 1503. *See, e.g., United States v. Griffin,* 589 F.2d 200 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979) (perjury by witness before grand jury had effect of obstructing justice by limiting avenues of inquiry); *United States v. Howton,* 688 F.2d 272 (5th Cir.1982) (false testimony before grand jury had effect of covering up illegal acts); *United States v. Cohn,* 452 F.2d 881 (2d Cir.1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972) (concealment of information and evasive testimony before grand jury); *United States v. Caron,* 551 F.Supp. 662 (E.D.Va.1982), *aff'd without opinion,* 722 F.2d 739 (4th Cir. 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984) (false declarations before grand jury falls within § 1503 where government also demonstrates the rendering of such testimony thwarted or impeded the grand jury's investigation). *Cf. United States v. Essex,* 407 F.2d 214 (6th Cir.1969) (reversing a conviction for obstructing justice by the defendant who submitted a false affidavit in an earlier unrelated criminal proceeding).

Appellant contends that false testimony without more will not support a conviction for obstruction of justice. However, that issue need not be resolved in this case. The record clearly shows that appellant's false statement to the magistrate had the effect of impeding the due administration of justice. Unlike false testimony offered at trial, the veracity of appellant's statements could not be readily tested through cross-examination within the short time available to prepare the presentence report. By taking advantage of the oral presentence report system which does not independently confirm the accuracy of the defendant's representations prior to sentencing, appellant deliberately sought to mis-

---

**6.** The issues of when the complaint was filed and whether judicial proceedings were pending could be treated as an issue of fact. If so, the

record clearly supports the district court's finding.

lead the court about her true status. The immediate fruit of her efforts was to receive a lenient sentence which presumably would not otherwise have been granted.

Appellant's argument that her false statements did not close all avenues of inquiry because the government could always consult official records ignores the utility of the oral presentence reporting system which permits the magistrate to sentence certain defendants immediately after accepting their guilty pleas. Requiring the probation officer to complete a thorough check on the defendant obviously defeats the speed and convenience of the oral presentence report system for the court and the parties.[7]

C. *The district court did not err in denying appellant's motion of acquittal on the charge of making false statements to the probation officer.*

■ Appellant argues that the district court should have applied "the exculpatory 'no' doctrine" and ruled that her negative responses were not "statements" within the meaning of 18 U.S.C. § 1001. Under the exculpatory no doctrine, a judicial gloss on § 1001, false denials of guilt by an accused to an investigator, without more, do not ordinarily fall within the scope of the statute. *See, e.g., United States v. Beer,* 518 F.2d 168, 171 (5th Cir.1975).

This Circuit has not been receptive to the exculpatory no doctrine. *See, e.g., United States v. Duncan,* 693 F.2d 971, 976 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *United States v. Moore,* 638 F.2d 1171, 1176 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981) ("It is doubtful whether the exculpatory no defense has any validity within this Circuit....") (dicta); *Tzantarmas v. United States,* 402 F.2d 163, 167 (9th Cir.1968), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1312, 22 L.Ed.2d 569 (1969). The exculpatory no doctrine has been recognized in limited circumstances. *See United States v. Bedore,*

455 F.2d 1109 (9th Cir.1972) (Section 1001 does not apply to a defendant who denied his identity to an F.B.I. agent who was attempting to serve a subpoena).

In *United States v. Rose,* 570 F.2d 1358, 1364 (9th Cir.1978) and *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981), the court, affirming convictions of defendants who made false statements to customs agents, distinguished *Bedore* on the grounds that (1) the declarant of the false statement was claiming a privilege; (2) his statement potentially impaired the function of the agency; (3) the government agent's questions were a "routine exercise of administrative responsibility"; and (4) a truthful answer would not have involved self-incrimination.

■ The facts of this case are controlled by the *Rose* and *Carrier* decisions rather than *Bedore.* First, the questioning occurred within the context of appellant seeking a privilege—in the form of probation—from the United States. *See United States v. Goldfine,* 538 F.2d 815, 820 (9th Cir.1976) (investigation of pharmacist registered to sell narcotics). Second, the record shows that appellant's false statement led the probation department to make an erroneous recommendation to the magistrate and resulted in the court's sentencing defendant in reliance on incorrect information. The statements impaired the basic functioning of the probation department. Third, the probation officer's questions regarding the use of aliases and prior convictions were a routine exercise of administrative responsibility. Finally, a truthful answer would not involve self-incrimination. Accordingly, the district court did not err in declining to apply the exculpatory no doctrine.

■ Gonzalez-Mares next contends that the subject matter of the questions was not a "matter within the jurisdiction" of the United States Probation Office as required by the statute. The issue of whether the

---

7. Such a system may overestimate human virtue and ultimately prove to be inefficient. However, the fact that a government program does not eliminate all opportunities and incentives for dishonesty is not a defense to the crimes for which appellant was convicted.

matter inquired into by the probation officer was "within the jurisdiction" of the United States Probation Department is a question of law subject to *de novo* review. *United States v. McConney, supra.*

Appellant urges that the phrase "within the jurisdiction" should be construed narrowly to refer to "the power to make final or binding determinations." The United States Probation Office lacks the power and authority to determine and impose a sentence on a convicted defendant; it simply makes recommendations.

Appellant's construction of § 1001 was rejected in *United States v. Rodgers,* —— U.S. ——, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984) where the Supreme Court held that the statute applied to false statements made in an investigation by the FBI and Secret Service in spite of the fact that these agencies had no power to adjudicate rights, establish binding regulations, or finally dispose of the problem giving rise to the inquiry.

The matters raised by the probation officer's questions of appellant concerning her identity and prior record are matters "within the jurisdiction" of the United States Probation Office which uses the responses to help formulate a recommended sentence. Under *Rodgers,* the fact that the court, and not the probation office, makes the ultimate disposition is not material on the question of the probation office's "jurisdiction."

This Circuit has held that § 1001 is applicable to matters before the judiciary. *United States v. Powell,* 708 F.2d 455, 457, *rehearing denied,* 719 F.2d 1480 (9th Cir. 1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 2383, 81 L.Ed.2d 342, *cert. denied,* —— U.S. ——, 104 S.Ct. 3540, 82 L.Ed.2d 845 (1984). The probation officer in this case was acting at the direction of the magistrate.

■ Finally, appellant argues that the evidence is insufficient to conclude beyond a reasonable doubt that she committed the acts charged in Count II. The test for sufficiency of evidence is whether viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that the evidence was adequate and sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

■ In Count II, the indictment charges that appellant made two false statements: (1) "that she had never been arrested for other than traffic offenses;" and (2) "that she had never used aliases."

Appellant alleges that the record does not indicate that she used specific aliases or had been arrested several times previously for transporting illegal aliens. However, the testimony of Stanley Winters shows that he discovered that appellant was, at the time of the presentence interview, on parole under a different name. The oral testimony of Winters which states that he made a record check of appellant and discovered that she had an extensive criminal record under several aliases. The Court apparently accepted this affidavit as part of the stipulated set of facts.

Viewed in the light most favorable to the government, the evidence establishes beyond a reasonable doubt that the appellant had been arrested for offenses other than traffic violations and that she had used aliases.

CONCLUSION

The judgment of the district court is AFFIRMED.