99 F.3d 1148
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan TORRES-PEREZ, Defendant-Appellant.
 No. 95-50376.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1996.
Decided Oct. 22, 1996.
 
 Before: HUG, Chief Judge; PREGERSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Torres-Perez appeals his conviction for forcibly resisting a federal officer, in violation of 18 U.S.C. § 111. We have jurisdiction under 18 U.S.C. § 1294(1). We affirm.
 
 BACKGROUND
 
 3
 1. The Rainbow Inspection Facility Incident.
 
 
 4
 On January 20, 1994 at 10:15 p.m., a California Highway Patrol ("C.H.P.") officer saw a U-Haul truck pass the Rainbow Inspection Facility on Interstate 15.
 
 
 5
 After noticing that the U-Haul truck had no commercial inspection sticker, the C.H.P. officer activated overhead lights that flashed, "Circle the facility to the static scale." The driver of the U-Haul truck hesitated at the exit, and the C.H.P. officer notified U.S. Border Patrol Agents Douglas and Partain.
 
 
 6
 Border Patrol Agent Douglas saw the U-Haul truck finishing a U-turn outside of the marked lane, heading towards the exit. Agent Douglas, who was wearing a full Border Patrol uniform, shined a flashlight toward the cab of the truck and it stopped.
 
 
 7
 Agent Douglas walked towards the U-Haul truck and saw Defendant Torres-Perez, the only person in the cab. Through the open window Agent Douglas instructed Torres-Perez several times--at least once in Spanish--to turn off the ignition.
 
 
 8
 Torres-Perez did not respond, and Agent Douglas opened the driver's door and reached inside the cab to turn off the engine. The agent's arm was in front of Torres-Perez, who was behind the wheel.
 
 
 9
 As Agent Douglas reached inside the cab, Torres-Perez accelerated the truck quickly enough to leave approximately thirty-five to forty feet of acceleration marks on the pavement and gouge metal rim marks for two to three feet.
 
 
 10
 While the U-Haul truck moved forward the Border Patrol agent tried to maintain his footing, moving forward with the truck approximately forty feet. Douglas then fell under the truck. Agent Douglas heard a loud bang and felt a scraping sensation on his leg. Douglas' right leg was crushed, and an artery severed.
 
 
 11
 Torres-Perez stopped accelerating the truck for a moment, closed the cab door, and then continued accelerating.
 
 
 12
 Torres-Perez was pursued by Border Patrol Agents and Riverside County Sheriff's Deputies for 10-20 miles, with speeds reaching eighty miles per hour. The U-Haul truck eventually flipped on a curve and rolled over several times. Defendant Torres-Perez was trapped within the cab, and at least thirty illegal aliens were found in the back of the truck.
 
 
 13
 A pager purchased by Guadalupe Para was recovered near the skid marks at the inspection facility. Ms. Para, also known as Guadalupe Para Perez, is Torres-Perez's wife.
 
 
 14
 2. California State Court Proceedings.
 
 
 15
 On March 23, 1994, Torres-Perez was convicted in a California state jury trial of assault with a deadly weapon, battery, evading a police officer, and reckless driving.
 
 
 16
 In the spring of 1994--after his state court conviction, and before his state sentence or this federal prosecution--Torres-Perez was questioned by Probation Officer Elaine Grenier. Probation Officer Grenier gave no Miranda warnings before the interview. During the interview, Officer Grenier asked Torres-Perez his marital status, his wife's name, and his address.
 
 
 17
 The information given in response to these questions would be used by the United States almost one year later in the federal prosecution that is the basis of this case. The evidence linked the defendant with his wife--the woman who had purchased the pager. There is no evidence that Probation Officer Grenier knew of the federal prosecution at the time of the presentence interview.
 
 
 18
 3. Federal Prosecution.
 
 
 19
 On November 16, 1996, a superseding indictment was filed in federal court, charging Torres-Perez with violating 18 U.S.C. § 111 in count one, and with transporting aliens in violation of 18 U.S.C. § 1324(a)(1)(B) in count two.
 
 
 20
 Specifically, count one of the superseding indictment charged that the defendant "intentionally and forcibly resisted, impeded, and interfered with David Douglas, a U.S. Border Patrol Agent...."
 
 
 21
 On February 10, 1996--over a month before trial--the United States filed its trial memorandum. The memorandum described the first essential element of an 18 U.S.C. § 111(a)(1), (b) offense as--"defendant intentionally used force in assaulting, resisting, or interfering with a federal officer." On the following page the government's trial memorandum explained that "[Section] 111 is a general intent crime."
 
 
 22
 One week before trial the parties submitted joint jury instructions, with one instruction based on Ninth Circuit Model Jury Instruction 8.02A (1992). The joint instruction based upon 8.02A required the jury to find "the defendant intentionally used force in resisting, impeding, or interfering with a U.S. Border Patrol Agent."
 
 
 23
 Torres-Perez never objected to the superseding indictment or to the original jury instruction relating to the elements of 18 U.S.C. § 111.
 
 
 24
 At trial and over the defendant's objection, State Probation Officer Grenier testified regarding her presentence interview of Torres-Perez. Officer Grenier explained that Torres-Perez provided her with his marital status, his wife's name, and his address.
 
 
 25
 After the jury had retired to deliberate, the district court received a note from the jury requesting a definition of the word "intentionally." The court instructed that " 'intentionally' when applied to Count One means the defendant acted with a purpose or willingness to commit the actions in question. The word 'intentionally' does not require an intent to violate the law or to injure another."
 
 
 26
 Torres-Perez was found guilty of both counts and sentenced to a term of custody of one hundred and thirty-two months on counts one and two. He now appeals.
 
 ANALYSIS
 1. Probation Officer Grenier's Testimony
 
 27
 Torres-Perez challenges the admission of Probation Officer Grenier's testimony at trial, which recounted information solicited at the presentence interview initiated without Miranda warnings.
 
 
 28
 We review the district court's denial of a motion to suppress evidence de novo. United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992). We review de novo the question whether a defendant is entitled to Miranda warnings. United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993). Where, as in this case, "there is no factual dispute as to whether Miranda warnings were given, what questions were asked and what answers were given, whether the defendant was subjected to interrogation is a mixed question of law and fact and reviewed de novo." United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir.1994).
 
 
 29
 Torres-Perez would distinguish the instant case from our decision in Baumann v. United States, 692 F.2d 565 (9th Cir.1982). In Baumann, this court held that a convicted prisoner need not be warned of his right to counsel and his right to remain silent before participating in a routine, authorized presentence interview. Id. at 576. Failure to issue Miranda warnings did not preclude the use of information from the presentence interview in a sentence hearing. Id.
 
 
 30
 We need not, however, explore the parameters of our decision in Baumann, because the questions asked by Probation Officer Grenier did not constitute "interrogation."
 
 
 31
 In United States v. Gonzalez-Mares, 752 F.2d 1485 (9th Cir.1985), we explained that "not every question posed in a custodial setting is equivalent to 'interrogation' requiring Miranda warnings." 752 F.2d at 1489. The test for determining whether questioning constitutes interrogation is whether "under all the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect." Id. (citations omitted). This is an objective test. Id. The agent's subjective intent is "relevant but not conclusive." Id. "Highly relevant" is the "relationship of the question asked to the crime suspected." Id.
 
 
 32
 The questions asked in this case--Torres-Perez's marital status, wife's name, and their address--were objectively "not likely to elicit incriminatory responses." Id. There is no evidence suggesting that Probation Officer Grenier subjectively intended to elicit incriminating information; the district court reasonably concluded that "there is certainly no showing that this state probation officer was consciously seeking incriminating information with an eye to a federal prosecution by simply asking the name of this defendant's wife and the address, the standard information." Finally, it cannot fairly be said that the questions were "directly related to the facts of the crime with which the defendant was then charged." 752 F.2d at 1489 (emphasis added). Indeed, Torres-Perez was charged with no federal crimes at the time of the state presentence interview.
 
 
 33
 We have held that "the routine gathering of background biographical data will not constitute interrogation." United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986) cert. denied, 479 U.S. 1007 (1987). Because Probation Officer Grenier's routine presentence questions did not constitute interrogation, Miranda warnings were not required. The district court therefore correctly denied Torres-Perez's motion to suppress the testimony of Probation Officer Grenier.
 
 
 34
 2. Denial of Torres-Perez's right to prepare an adequate defense.
 
 
 35
 Torres-Perez also contends that he was denied the Sixth Amendment right to prepare an adequate defense, by the inclusion of the word "intentionally" in the indictment and jury instructions concerning 18 U.S.C. § 111. We disagree.
 
 
 36
 We review the question whether a jury instruction misstates elements of a statutory crime de novo. United States v. Tagalicud, 84 F.3d 1180, 1183 (9th Cir.1996). The appropriate standard of review for denial of a defendant's requested jury instructions depends on the issue for review. United States v. Duran, 59 F.3d 938, 941 (9th Cir.1995) cert. denied, 116 S.Ct. 535 (1995). Instruction issues that are questions of law, as is the case here, are reviewed de novo. Id. We review the issue of denial of the right to prepare an adequate defense de novo. United States v. Devlin, 13 F.3d 1361, 1363 (9th Cir.1994).
 
 
 37
 The offense described in 18 U.S.C. § 111 is a general intent crime. United States v. Jim, 865 F.2d 211, 215 (9th Cir.1988) cert. denied, 493 U.S. 827 (1989). Torres-Perez contends that the indictment and joint jury instruction characterized 18 U.S.C. § 111 as a specific intent crime by including the word "intentionally," and that his defense relied upon this characterization.
 
 
 38
 The use of the word "intentionally" did not transform the offense charged into a specific intent crime. We have found that defining "knowingly" as "voluntarily and intentionally " is a "perfectly adequate formulation of the idea of general intent." United States v. Smith, 638 F.2d 131, 133 (9th Cir.1981) (emphases added); see also United States v. Martinez, 49 F.3d 1398, 1401 n. 5 (9th Cir.1995) (holding that an instruction that requires that a defendant act intentionally or voluntarily is consistent with general, rather than specific intent.)
 
 
 39
 Moreover, Torres-Perez cannot fairly claim that he was prejudiced by the government's argument that 18 U.S.C. § 111 is a general intent crime, because the government's trial memorandum clearly informed him that 18 U.S.C. § 111 is a general intent crime a month before trial.
 
 
 40
 Under the Sixth Amendment, a criminal defendant is guaranteed "the fundamental right to be clearly informed of the nature and course of the charges in order to permit adequate preparation of a defense." Stephens v. Borg, 59 F.3d 932, 934 (9th Cir.1995). We have found that a defendant was denied this right when he was "ambushed" with a new prosecution theory after both sides had rested, and just before closing argument. Sheppard v. Rees, 909 F.2d 1234, 1236-37 (9th Cir.1990). Torres-Perez, however, was not "ambushed"--he was put on notice that 18 U.S.C. § 111 is a general intent crime when the government stated as much in its trial memorandum a month before trial. See Stephens, 59 F.3d at 936 (holding defendant not "ambushed" when put on notice of prosecution theory five days before closing arguments.)
 
 
 41
 The use of the word "intentionally" in the superseding indictment and jury instruction number twelve neither transformed 18 U.S.C. § 111 into a specific intent crime, nor prejudiced Torres-Perez's right to prepare an adequate defense.
 
 
 42
 3. Sufficiency of the evidence.
 
 
 43
 We review the sufficiency of evidence to support Torres-Perez's conviction in the light most favorable to the prosecution, and ask if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Jones, 84 F.3d 1206, 1210 (9th Cir.1996).
 
 
 44
 There was sufficient evidence for the jury to have found beyond a reasonable doubt that Torres-Perez violated 18 U.S.C. § 111; a general intent crime.
 
 
 45
 The jury could have reasonably inferred that Torres-Perez purposefully and willingly committed the acts in question. When Torres-Perez encountered Douglas, Douglas was wearing the full Border Patrol uniform. Torres-Perez did not turn off the U-Haul truck's engine after several requests by Agent Douglas. When Agent Douglas reached in to turn-off the ignition, Torres-Perez accelerated so dramatically that the truck left thirty-five to forty feet of skid marks.
 
 
 46
 The jury could also infer purposeful action from Torres-Perez's continued acceleration despite the fact that Agent Douglas was hanging on or running alongside the truck.
 
 
 47
 It would also be rational for the jury to infer that after Douglas fell--and after the immediately-following bang--Torres-Perez knew that he had eluded the agent. The jury could also reasonably infer, as Torres-Perez stopped and closed the door then accelerated out of the facility, that the defendant had deliberately resisted Border Patrol Agent Douglas.
 
 
 48
 Our review of the record reveals that there was sufficient evidence for a rational jury to find that Torres-Perez violated 18 U.S.C. § 111.
 
 
 49
 The conviction of Juan Torres-Perez is therefore AFFIRMED.
 
 
 50
 REINHARDT, Circuit Judge, concurring.
 
 
 51
 I concur. However, I believe that most of the discussion in the disposition is unnecessary. As to point one, because any error with respect to the obtaining of Torres' wife name is obviously harmless, I would not discuss the question whether an error occurred but simply affirm on the ground of harmless error. As to point three, I would simply say that a review of the record reveals that the evidence was sufficient. I agree with the discussion regarding point two.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3