**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

BARRY LAMAR BONDS,
            *Defendant-Appellant*.

No. 11-10669

D.C. No.
3:07-cr-00732-SI-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted
February 13, 2013—San Francisco, California

Filed September 13, 2013

Before: Mary M. Schroeder, Michael Daly Hawkins,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Schroeder

## SUMMARY[*]

### Criminal Law

The panel affirmed Barry Bonds's conviction of one count of obstruction of justice, in violation of 18 U.S.C. § 1503, arising from Bonds's testimony before a grand jury investigating whether the proceeds of the sales of performance enhancing drugs were being laundered.

The panel held that § 1503 applies to factually true statements that are evasive or misleading.

The panel held that there was sufficient evidence to convict Bonds because his statement describing his life as a celebrity child – in response to a question asking whether his trainer ever gave him any self-injectable substances – was evasive, misleading, and capable of influencing the grand jury to minimize the trainer's role in the distribution of performance enhancing drugs.

The panel rejected as foreclosed by precedent Bonds's contention that § 1503 does not apply to a witness's statements before a grand jury.

The panel rejected Bonds's contentions that the use of the word "corruptly" in § 1503 is unconstitutionally vague.

The panel held that the indictment – which covered any false, misleading, or evasive statement Bonds made during

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

his grand jury testimony – was sufficient, and that narrowing the indictment via jury instructions listing the specific statements for which Bonds could be convicted – was permissible.

The panel concluded that the district court properly rejected Bonds's request to add the words "when considered in its totality" to the jury instructions.

## COUNSEL

Dennis P. Riordan (argued) and Donald M. Horgan, Riordan & Horgan, San Francisco, California; Ted Sampsell Jones, William Mitchell College of Law, St. Paul, Minnesota, for Defendant-Appellant.

Melinda Haag, United States Attorney, Barbara J. Valliere, Assistant United States Attorney, Merry Jean Chan (argued), Assistant United States Attorney, San Francisco, California, for Plaintiff-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

Barry Bonds was a celebrity child who grew up in baseball locker rooms as he watched his father Bobby Bonds and his godfather, the legendary Willie Mays, compete in the Major Leagues. Barry Bonds was a phenomenal baseball player in his own right. Early in his career he won MVP awards and played in multiple All-Star games. Toward the end of his career, playing for the San Francisco Giants, his

appearance showed strong indications of the use of steroids, some of which could have been administered by his trainer, Greg Anderson. Bonds's weight and hat size increased, along with the batting power that transformed him into one of the most feared hitters ever to play the game. From the late-1990s through the early-2000s, steroid use in baseball fueled an unprecedented explosion in offense, leading some commentators to refer to the period as the "Steroid Era."[1] In 2002, the federal government, through the Criminal Investigation Division of the Internal Revenue Service, began investigating the distribution of steroids and other performance enhancing drugs ("PEDs"). The government's purported objective was to investigate whether the distributors of PEDs laundered the proceeds gained by selling those drugs.

The government's investigation focused on the distribution of steroids by the Bay Area Laboratory Co-operative ("BALCO"), which was located in the San Francisco Bay Area. The government raided BALCO and obtained evidence suggesting that Anderson distributed BALCO manufactured steroids to Bonds and other professional athletes. The government convened a grand jury in the fall of 2003 to further investigate the sale of these drugs in order to determine whether the proceeds of the sales were being laundered. Bonds and other professional athletes were called to testify. Bonds testified under a grant of immunity and denied knowingly using steroids or any other PEDs provided by BALCO or Anderson. The government

---

[1] *See* Buster Olney, *Steroid Allegations Overshadow Achievements*, http://sports.espn.go.com/mlb/columns/story?columnist=olney_buster& id=2011727 (last visited July 22, 2013) ("[H]istory is destined to recall th[e] period [from 1988 to 2004] as baseball's Steroid Era.").

later charged Bonds with obstructing the grand jury's investigation.  After a jury trial, Bonds was convicted of one count of obstruction of justice in violation of 18 U.S.C. § 1503.  He now appeals.  We affirm the conviction.

## BACKGROUND

Our earlier opinion provides the background of the government's investigation into BALCO and Bonds.  *See United States v. Bonds*, 608 F.3d 495, 498–99 (9th Cir. 2010).  Because Bonds's grand jury testimony is central to this appeal and was not at issue in the earlier opinion, we below briefly describe his grand jury testimony and the resulting criminal trial.

On December 4, 2003, Bonds testified before the grand jury under a grant of immunity pursuant to 18 U.S.C. § 6002.  The immunity order stated that "the testimony and other information compelled from BARRY BONDS pursuant to this order . . . may not be used against him in any criminal case, except a case for perjury, false declaration, or otherwise failing to comply with this order."  Before Bonds testified, the government informed him that the purpose of the grand jury was to investigate any illegal activities, including the distribution of illegal substances, that Anderson and Victor Conte (the founder of BALCO) engaged in.  The government also explained the scope of the immunity grant under which Bonds would testify.

Bonds testified before the grand jury that Anderson never offered him, supplied him with, or administered to him any human growth hormone, steroids, or any substance that required injection.  A portion of Bonds's testimony, referred to as "Statement C," formed the basis for the later criminal

charge of obstruction of justice. It is the underlined portion of the following grand jury excerpt:

> Question: Did Greg ever give you anything that required a syringe to inject yourself with?
>
> Answer: I've only had one doctor touch me. And that's my only personal doctor. Greg, like I said, we don't get into each others' personal lives. We're friends, but I don't – we don't sit around and talk baseball, because he knows I don't want – don't come to my house talking baseball. If you want to come to my house and talk about fishing, some other stuff, we'll be good friends, you come around talking about baseball, you go on. I don't talk about his business. You know what I mean?
>
> Question: Right.
>
> Answer: *That's what keeps our friendship. You know, I am sorry, but that - you know, that – I was a celebrity child, not just in baseball by my own instincts. I became a celebrity child with a famous father. I just don't get into other people's business because of my father's situation, you see.*

Shortly after that exchange, the government returned to the subject of drugs and asked whether Anderson provided Bonds any drugs that required self-injection. Bonds answered with a somewhat indirect denial:

Question:  And, again, I guess we've covered
this, but – did [Anderson] ever give you
anything that he told you had to be taken with
a needle or syringe?

Answer:  Greg wouldn't do that.  He knows
I'm against that stuff.  So, he would never
come up to me – he would never jeopardize
our friendship like that.

Question:  Okay.  So, just so I'm clear, the
answer is no to that, he never gave you
anything like that?

Answer:  Right.

Bonds was later indicted on the basis of his grand jury
testimony.  The third superseding indictment charged him
with four counts of making false statements before a grand
jury in violation of 18 U.S.C. § 1623(a), and one count of
obstruction of justice in violation of 18 U.S.C. § 1503.  With
respect to the obstruction of justice charge, the indictment
read as follows:

On or about December 4, 2003, in the
Northern District of California, the defendant,
Barry Lamar Bonds, did corruptly influence,
obstruct, and impede, and endeavor to
corruptly influence, obstruct and impede, the
due administration of justice, by knowingly
giving material Grand Jury testimony that was
intentionally evasive, false, and misleading,
including but not limited to the false
statements made by the defendant as charged

in Counts One through Four of this
Indictment. All in violation of Title 18,
United States Code, Section 1503.

Bonds's criminal trial began on March 22, 2011, but was
interrupted when the government appealed an adverse
evidentiary ruling. The district court had excluded on hearsay
grounds evidence the government contended linked Bonds to
steroid use. We affirmed the district court's decision to
exclude the evidence. *Bonds*, 608 F.3d at 508. The trial then
continued.

At the close of its case-in-chief, the government
dismissed one of the false statement charges. On April 13,
2011, the trial jury returned its verdict. The jury convicted
Bonds of the obstruction of justice charge, finding on the
verdict form that Statement C was misleading or evasive. It
was unable to reach a verdict on the remaining three false
statement counts. The district court sentenced Bonds to 30
days home confinement and two years probation.

Bonds now appeals the judgment of conviction. He
asserts five principal challenges. First, he asserts that the
obstruction of justice statute, 18 U.S.C. § 1503, does not
apply to statements that are misleading or evasive, but
nevertheless factually true, and even if § 1503 does apply,
there was insufficient evidence to support his conviction.
Second, he claims that § 1503 does not cover a witness's
testimony to a grand jury. Third, he contends that the use of
the word "corruptly" in § 1503 is unconstitutionally vague.
Fourth, he maintains that the indictment did not provide him
with sufficient notice of the obstruction of justice charge.
Fifth and finally, he argues that the trial court should have

granted his request to modify the jury instructions. We affirm the conviction.

## DISCUSSION

### I.

Bonds claims that he could not have been convicted of obstructing the grand jury's investigation with an answer that was misleading or evasive, no matter how far removed that answer was from the question asked, unless the answer was false. According to Bonds, because his response in Statement C that he was a "celebrity child" was factually true, his conviction should be reversed. The problem is that while Bonds was a celebrity child, that fact was unrelated to the question, which asked whether Anderson provided Bonds with any self-injectable substances. When factually true statements are misleading or evasive, they can prevent the grand jury from obtaining truthful and responsive answers. They may therefore obstruct and impede the administration of justice within the meaning of the federal criminal statute, 18 U.S.C. § 1503, a statute that sweeps broadly.

The obstruction of justice statute provides in relevant part:

> Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

18 U.S.C. § 1503(a).

That portion of the statute, known as the omnibus clause, is comprehensive. We have described it as being "designed to proscribe all manner of corrupt methods of obstructing justice." *United States v. Rasheed*, 663 F.2d 843, 851–52 (9th Cir. 1981). The essence of the statute is that it criminalizes conduct intended to deprive the factfinder of relevant information. *See United States v. Ashqar*, 582 F.3d 819, 822–23 (7th Cir. 2009); *see also United States v. Brady*, 168 F.3d 574, 577–78 (1st Cir. 1999) ("It is settled . . . that 'the due administration of justice' includes the operation of the grand jury, and that depriving the grand jury of information may constitute obstruction under [18 U.S.C. § 1503]"). The language of the statute does not differentiate between obstructive statements that are false, and obstructive statements that are not false. It requires only that the defendant make his statement with the intent to obstruct justice.

We can easily think of examples of responses that are true but nevertheless obstructive. Consider a situation where a prosecutor asks a grand jury witness if the witness drove the getaway car in a robbery. The witness truthfully responds, "I do not have a driver's license." This response would be factually true, but it could also imply that he did not drive the getaway car. If the witness did in fact drive the getaway car, his answer, although not in itself false, would nevertheless be misleading, because it would imply that he did not drive the getaway car. It could also be deemed evasive since it did not answer the question.

The cases interpreting § 1503 support our conclusion that misleading or evasive testimony that is factually true can obstruct justice. Several courts have noted the material similarity between evasive or misleading testimony and false

testimony. In *United States v. Griffin*, the Fifth Circuit observed that there was no material difference between an evasive answer that deliberately conceals information and a false answer, because both block the flow of truthful information. 589 F.2d 200, 204 (5th Cir. 1979). The Eleventh Circuit in *United States v. Perkins* grouped evasive and false statements together when it stated that "a reasonable jury could have found that [the defendant's] answers were evasive or false in an effort to obstruct the grand jury's investigation." 748 F.2d 1519, 1527–28 (11th Cir. 1984). The Second Circuit quoted with approval the district court in *United States v. Gambino (Thomas)*, No. 89-CR-431 (E.D.N.Y.), in which Judge Jack Weinstein said that "literally true but evasive and misleading testimony would support prosecution of [the defendant] for obstruction of justice." *United States v. Remini*, 967 F.2d 754, 755 (2d Cir. 1992). Accordingly, we hold that § 1503 applies to factually true statements that are evasive or misleading. Bonds cannot escape criminal liability under § 1503 by contending that his response that he was a "celebrity child" was true.

Bonds next asserts that even if the obstruction of justice statute can apply to factually true statements, the evidence at trial did not establish that Statement C was evasive, misleading, or material. We must view the evidence in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and we conclude that there was sufficient evidence to convict Bonds of obstructing justice.

The jury instructions provided that the government had to prove that Bonds, "(1) for the purpose of obstructing justice, (2) obstructed, influenced, or impeded, or endeavored to obstruct, influence, or impede the grand jury proceeding in which [he] testified, (3) by knowingly giving material

testimony that was intentionally evasive, false, or misleading." Bonds does not challenge the instructions as to these elements.

Bonds made Statement C in response to a question that asked whether Greg Anderson ever gave Bonds any self-injectable substances. Bonds responded that he and Anderson did not discuss each other's "business." Bonds stated:

> That's what keeps our friendship. You know, I am sorry, but that – you know, that – I was a celebrity child, not just in baseball by my own instincts. I became a celebrity child with a famous father. I just don't get into other people's business because of my father's situation, you see.

Bonds's description of his life as a celebrity child had nothing to do with the question, which asked whether Anderson provided him with self-injectable substances. The statement served to divert the grand jury's attention away from the relevant inquiry of the investigation, which was Anderson and BALCO's distribution of steroids and PEDs. The statement was therefore evasive.

The statement was also at the very least misleading, because it implied that Bonds did not know whether Anderson distributed steroids and PEDs. Yet, the jury at trial heard testimony from the Giants former team athletic trainer who testified about a conversation he had with Bonds before Bonds's grand jury testimony. According to the trainer, Bonds stated in this conversation that he knew that Anderson distributed steroids. Bonds also told the trainer about techniques Anderson used to conceal the identities of players

taking steroids. This evidence at trial showed that Bonds's statement to the grand jury was misleading. It is irrelevant that Bonds eventually provided a direct response to the question about self-injectable substances. Section 1503 punishes any "endeavor" to obstruct. Obstruction occurred when Bonds made Statement C.

With respect to materiality, we have said that a statement is material so long as it had "a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." *United States v. McKenna*, 327 F.3d 830, 839 (9th Cir. 2003) (internal quotation marks omitted). The question asking whether Anderson provided Bonds with injectable substances was well within the scope of the grand jury's investigation, since many steroids and PEDs are injectable. Bonds's evasive and misleading "celebrity child" response was capable of influencing the grand jury to minimize Anderson's role in the distribution of illegal steroids and PEDs. The statement was material.

## II.

Bonds next asks us to hold that even if § 1503 applies to evasive or misleading statements that are factually true, the statute does not apply to statements a witness makes to the grand jury. Established Ninth Circuit and Supreme Court precedent, however, holds that § 1503 does apply to a witness's testimony before the grand jury. The omnibus clause of the statute is just that. It "proscribe[s] all manner of corrupt methods of obstructing justice." *Rasheed*, 663 F.2d at 852; *see also United States v. Aguilar*, 515 U.S. 593, 598 (1995) (noting that the "'[o]mnibus [c]lause' serves as a

catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice").

Consistent with the broad scope of the omnibus clause, we have held that a witness can be convicted under § 1503 on the basis of statements made under oath before a judge. *United States v. Gonzalez-Mares*, 752 F.2d 1485, 1491–92 (9th Cir. 1985); *see also Griffin*, 589 F.2d at 205–06 (rejecting the argument that the legislative history of § 1503 militates against applying the statute to a witness's in-court statements).

Bonds cites an early case in which we described the statute as applying to threatening conduct occurring outside of the courtroom. We once said that § 1503 "seem[ed] to be limited to intimidating actions" against witnesses and jurors. *United States v. Metcalf*, 435 F.2d 754, 757 (9th Cir. 1970). This court and the Supreme Court, however, have subsequently recognized that § 1503 applies to a witness's in-court testimony. In *Rasheed*, we clarified *Metcalf* and ruled that § 1503's scope was not limited to "intimidating actions." 663 F.2d at 852 ("The use of the word 'corruptly' in the statute is a clear indication that not every violation of [§] 1503 involves threats or intimidation."). Later in *Gonzalez-Mares* we made it clear that § 1503 applies to false statements a defendant makes under oath to a judge. 752 F.2d at 1491. The Supreme Court confirmed our interpretation of § 1503 when it concluded that one who delivers false testimony or documents directly to the grand jury violates § 1503, because such conduct "all but assures that the grand jury will consider the material in its deliberations." *Aguilar*, 515 U.S. at 601.

Bonds's contention that his conviction should be reversed on the ground that § 1503 does not apply to a witness's statements before the grand jury is therefore foreclosed by established precedent.

## III.

Bonds next argues that the use of the word "corruptly" in § 1503 is unconstitutionally vague and failed to put him on notice that his conduct was criminal. The word "corruptly" in the omnibus clause of § 1503 provides the mens rea of the statute and means that the obstructive conduct "must be done with the purpose of obstructing justice." *Rasheed*, 663 F.2d at 852.

Bonds relies on the D.C. Circuit's opinion in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), to support his claim that the term "corruptly" is unconstitutionally vague. *Poindexter*, however, involved an as-applied challenge to a different statute, 18 U.S.C. § 1505, that proscribes corruptly obstructing or impeding a congressional or agency proceeding. The court ruled that § 1505's use of the term "corruptly" was "too vague to provide constitutionally adequate notice that [§ 1505] prohibits lying to Congress." *Id.* at 379. Even though the use of "corruptly" in § 1505 was borrowed from § 1503, the *Poindexter* court itself cautioned other courts against finding that the term as used in § 1503 was unconstitutionally vague. *Id.* at 385. The court noted that § 1503 and § 1505 are so "materially different" that the interpretation of § 1505 should not guide the interpretation of § 1503. *Id.*

The courts examining this issue, including the D.C. Circuit that decided *Poindexter*, have thus refused to extend

*Poindexter*'s holding to § 1503. *See, e.g.*, *United States v. Russo*, 104 F.3d 431, 435–36 (D.C. Cir. 1997); *United States v. Watt*, 911 F. Supp. 538, 545–47 (D.D.C. 1995); *see also Griffin*, 589 F.2d at 206–07 (rejecting the argument that the term "corruptly" in § 1503 is unconstitutionally vague). Bonds cannot cite any case reversing a § 1503 conviction on the theory that the term "corruptly" in § 1503 is unconstitutionally vague. The most he can cite is a footnote in which an en banc panel of this court noted that *Poindexter* raised an issue of whether the term "corruptly" in § 1503 was unconstitutionally vague. *United States v. Aguilar*, 21 F.3d 1475, 1486 n.8 (9th Cir. 1994) (en banc), *aff'd in part, rev'd in part*, 515 U.S. 593, 606 (1995). The Supreme Court reviewed *Aguilar*, but the majority resolved the case without addressing the vagueness argument. *See Aguilar*, 515 U.S. at 600 & n.1.

Although the majority in *Aguilar* did not reach the vagueness issue, the dissenters did. Justice Scalia, joined by Justices Kennedy and Thomas, dissented and expressly rejected the contention that the term "corruptly" in § 1503 is unconstitutionally vague. *Id.* at 616–17 (Scalia, J., dissenting). The dissent noted that it is "well-accepted" that the term "corruptly" means "[a]n act done with an intent to give some advantage inconsistent with official duty and the rights of others . . . . It includes bribery but is more comprehensive; because an act may be corruptly done though the advantage to be derived from it be not offered by another." *Id.* (internal quotation marks omitted) (omission in original).

Therefore, the only opinions discussing vagueness challenges to the use of the term "corruptly" in § 1503 have rejected such challenges. Their analysis is sound, and there

is no basis for holding that Bonds lacked notice that he could be punished under § 1503 for providing the grand jury with misleading or evasive testimony. Grand jury testimony "intended to influence, obstruct, or impede, the due administration of justice [is] obviously wrongful, just as [it is] necessarily 'corrupt.'" *Id.* (internal quotation marks omitted).

## IV.

Bonds also contends that the indictment was insufficient because Statement C was not explicitly referenced or quoted in the indictment. An indictment is sufficient if it contains all of the elements of the offense charged so that it informs the defendant of the charge, and enables the defendant to use the indictment to prevent "future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The obstruction of justice count read in relevant part as follows:

> On or about December 4, 2003, in the Northern District of California, the defendant, Barry Lamar Bonds, did corruptly influence, obstruct, and impede, and endeavor to corruptly influence, obstruct and impede, the due administration of justice, by knowingly giving material Grand Jury testimony that was intentionally evasive, false, and misleading, including but not limited to the false statements made by the defendant as charged in Counts One through Four of this Indictment. All in violation of Title 18, United States Code, Section 1503.

The indictment put Bonds on notice that he could be convicted of violating § 1503 for any material false, misleading, or evasive statement he made during his grand jury testimony. During the pre-trial stage of the case, the district court limited the statements the jury could actually consider, and the government proposed jury instructions identifying eleven separate statements that could constitute an obstruction of justice. Then, before the jury was instructed, the number of obstructive statements was further reduced by the court. The jury was instructed correctly that to convict, it had to agree unanimously on which statement or statements qualified as intentionally evasive, false, or misleading.

Bonds argues that the listing of specific statements somehow, and improperly, expanded the indictment. A listing of statements might be problematic if the original indictment charged a few specific obstructive statements, and the jury instructions later added other statements. *See United States v. Shipsey*, 190 F.3d 1081, 1086–87 (9th Cir. 1999) (jury instructions are improper if they permit the jury to convict under a theory not included in the indictment).

That scenario, however, did not occur in Bonds's case. The indictment here covered any false, misleading, or evasive statement he made during his grand jury testimony. The listing of specific statements in the jury instructions, therefore, narrowed the statements for which Bonds could be convicted. Narrowing an indictment via jury instructions is permissible. *United States v. Wilbur*, 674 F.3d 1160, 1178 (9th Cir. 2012). The indictment was sufficient.

## V.

Bonds last challenges the district court's rejection of his request to modify the jury instructions. Bonds requested that the instructions for the obstruction count contain the words "when considered in its totality," such that the instructions would have read "by knowingly giving material testimony that, when considered in its totality, was intentionally evasive, false, and misleading."

The district court correctly rejected Bonds's proposed addition because it added little or nothing to the instructions given, and was covered adequately by those instructions. *See United States v. Thomas*, 612 F.3d 1107, 1120 (9th Cir. 2010). The jury knew it had to consider statements in context because it was instructed to "consider[] all the evidence," and was instructed that a statement was material "if it had a natural tendency to influence, or was capable of influencing, the decision of the grand jury." To the extent Bonds's proposed language deviated from the given instructions by implying that the jury had to find that Bonds's entire testimony was evasive or misleading in order to convict him, Bonds's proposed language was incorrect. The indictment and the jury instructions made clear that Bonds could be convicted on the basis of individual statements that were evasive or misleading.

## CONCLUSION

The judgment of the district court is **AFFIRMED**.