N.R. SMITH, Circuit Judge,
with whom Circuit Judges WARDLAW, CALLAHAN, and FRIEDLAND join,
concurring:
I agree that no reasonable juror could have found Bonds guilty of violating 18 U.S.C. § 1503.
*587 Bonds was convicted of obstructing justice by offering a “misleading or evasive” statement — Statement C — to the grand jury. The Government expressly declined to seek a conviction on the grounds that Statement C was false.[1] When evaluating whether the evidence was sufficient to show that Statement C violated § 1503, we must determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review requires us to determine whether the jury could “draw reasonable inferences from basic facts to ultimate facts.” Id. In this particular case, we must determine whether a single truthful but evasive or misleading answer could constitute evidence of obstruction of justice under § 1503. It cannot.
Section 1503(a) punishes those who “corruptly ... influence, obstruct ], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice.”[2] The Supreme Court has imposed a materiality requirement on the broad reach of § 1503, requiring that “the endeavor must have the natural and probable effect of interfering with the due administration of justice.” United States v. Aguilar, 515 U.S. 593, 599, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (internal quotation marks omitted). The Government is required to prove materiality to the jury. United States v. Gaudin, 515 U.S. 506, 511-12, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The Supreme Court further instructs us, when dealing with the sweeping language of § 1503, to “exercise[] restraint in assessing the reach of a federal criminal statute ... out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.” Aguilar, 515 U.S. at 600, 115 S.Ct. 2357 (internal quotation marks omitted).
1.
Congress could not have intended § 1503 to be so broadly applied as to reach a single truthful but evasive statement *588 such as Statement C. Our conclusion that Statement C could not have “the natural and probable effect” of impeding the grand jury’s investigative function stems from two sources: (1) the Government’s duty to clarify merely misleading or evasive testimony and (2) relevant precedent indicating that the Government must show that truthful but misleading or evasive testimony must amount to a refusal to testify before it is material. Taken together, these two sources lead to the conclusion that a single truthful but evasive or misleading statement cannot satisfy § 1503’s materiality requirement.[3]
The Supreme Court’s decision in Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), requires the conclusion that Statement C does not violate § 1503. Although Bronston dealt with a conviction for perjury, the Supreme Court’s language regarding the government’s duty to conduct competent and thorough questioning is illuminating. In short, “[t]he burden is on the questioner to pin the witness down to the specific object of the questioner’s inquiry.” Id. at 360, 93 S.Ct. 595. Extending § 1503’s reach to transient evasive or misleading statements would obviate the prosecutor’s duty to thoroughly examine the witness. Id. at 358, 93 S.Ct. 595 (noting that competent cross-examination should be conducted “by counsel alert — as every examiner ought to be — to the incongruity of [the witness’s] unresponsive answer”). It would be contrary to the statute’s purpose to allow the government to permit an evasive or misleading statement to go unchallenged, in the hopes of obtaining an obstruction of justice conviction later. The government is obligated to do all it can to obtain a direct statement in response to its questioning. The truth-seeking function of the grand jury may be impaired by lax questioning as much, if not more than, an inarticulate or wandering answer.
Bronston counsels that, to convict a defendant for violating § 1503, the jury must find more than that the witness uttered an evasive or misleading statement at some point during his testimony — the “natural and probable effect” of a single truthful but evasive or misleading statement is merely to prompt follow-up questions. Given this burden, Statement C did not have the natural or probable effect of interfering with the due administration of justice, because the Government had a duty to clarify any single misleading or evasive statement Bonds made.
2.
The Supreme Court’s materiality standard reinforces Bronston’s core . holding: we should not find liability for a single statement that is merely misleading or evasive. The judicially-created materiality requirement is a primary objective limitation on § 1503’s expansive reach. See United States v. Thomas, 612 F.3d 1107, *589 1128-29 (9th Cir.2010). This materiality standard necessarily takes into account the context of the charged conduct, evaluating whether the misleading or evasive statement could have “the natural and probable effect of interfering with the due administrative of justice” given the entirety of a witness’s examination. Aguilar, 515 U.S. at 599, 115 S.Ct. 2357 (internal quotation marks omitted). The Government may not isolate a single statement, prove it misleading or evasive, and argue that the statement is material based solely on that fact.
Evasive or misleading statements are different from false statements. Instead of providing the tribunal with bad information, information that can be evaluated for its capability to influence, a misleading or evasive statement is meant to divert or slow the truth-seeking function in the first instance; it does not so much influence an investigation as divert.it by depriving the question of its force. In this sense, offering evasive or misleading testimony is closely analogous to the destruction of evidence. See United States v. Rasheed, 663 F.2d 843, 852 (9th Cir.1981) (“the destruction or concealment of documents can fall within the prohibition of the statute” by “suppress[ing] evidence”). We should evaluate the materiality of evasive or misleading testimony the same way: for its capability to impede the investigative function of the grand jury.
The Fifth Circuit’s explanation of the materiality standard in United States v. Griffin is particularly persuasive precedent. A false, misleading, or evasive statement may be material, taken in the context of the entire examination, when it amounts to “a flat refusal to testify.” United States v. Griffin, 589 F.2d 200, 204 (5th Cir.1979). Evasive or misleading testimony, in this light, can only obstruct the due administration of justice when it completely thwarts the investigative nature of the tribunal— when it derails the grand jury “as effectively as if [the witness] refused to answer the question at all.” Id. The proper question is hot whether a statement had the intrinsic capability to influence the grand jury, but whether the statement, viewed in the context of the witness’s testimony as a whole, “closed off entirely the avenue of inquiry being pursued by” the grand jury. United States v. Brown, 459 F.3d 509, 531 (5th Cir.2006) (internal quotation marks omitted); see also United States v. Cohn, 452 F.2d 881, 884 (2d Cir.1971) (“The blatantly evasive witness achieves th[e] effect [of impeding the gathering of relevant evidence] as surely by erecting a screen of feigned forgetfulness as one who burns files or induces a potential witness to absent himself.”).
Applying the materiality standard a single truthful but evasive or misleading statement can never be material. Our examination ,of Statement C — a single evasive or misleading statement — reveals why. No rational juror could have found that Statement C amounted to a refusal to testify, such that Bonds’s testimony thwarted the grand jury’s investigative function.
In summary, the “natural and probable effect” of a single true but evasive response to the government’s questioning is not to impede the grand jury but, rather, to prompt follow-up questioning. A statement that “goes off into the cosmos” merely triggers the prosecutor’s duty to pin the witness down and elicit a clear response. Indeed, that is exactly what happened in this case. Faced with a rambling response, the prosecutor restated the same question and elicited a direct, unambiguous answer from Bonds: -“No.” No rational juror could conclude that Bonds refused to answer the question; it is plain in the record that Bonds gave his testimony to *590 the grand jury. Further, this is thus not a situation in which a witness testified evasively for so long and with such persistence that the grand jury’s investigation would likely have been thwarted, as would be required for the testimony to be material. Statement C was therefore not material, and Bonds’s conviction must be reversed.

. . The Government asserts that, despite the position it argued to the jury, the evidence was sufficient to conclude that Statement C was literally false. The Government will not be allowed to change its position on appeal. See McCormick v. United States, 500 U.S. 257, 270 n. 8, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.”).

. We need not accept Bonds's invitation to reassess the reach of § 1503. Doing so would require us to overturn the weight of Ninth Circuit precedent applying § 1503 to in-court testimony. See United States v. Thomas, 612 F.3d 1107 (9th Cir.2010) (applying § 1503 to false statements made before a grand jury); United States v. Gonzalez-Mares, 752 F.2d 1485 (9th Cir.1985) (applying § 1503 to false statement made before a magistrate judge); United States v. Rasheed, 663 F.2d 843 (9th Cir.1981) (applying § 1503 to concealment of documents from grand jury). This approach would also bring us into conflict with other circuits that have applied § 1503 in the same manner. See United States v. Petzold, 788 F.2d 1478 (11th Cir.1986) (applying § 1503 to grand jury testimony); United States v. Griffin, 589 F.2d 200 (5th Cir.1979) (same); United States v. Cohn, 452 F.2d 881 (2d Cir.1971) (same). Further, even if we were to consider Bonds’s arguments that the legislative history of § 1503 limits the application of the statute, we would run up against the Supreme Court’s decision in Aguilar, which implied that false testimony offered directly to a grand jury could support a conviction under § 1503. United States v. Aguilar, 515 U.S. 593, 601, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). Given our conclusion that Bonds's conviction cannot stand even if § 1503 reaches in-court testimony, we need not confront this issue.

. In coming to this conclusion, I do not mean to suggest that the materiality of Statement C turns on whether it was truthful. Because Statement C was obviously non-responsive, it could not have constituted obstruction even if it had been false. A witness who is asked about the location of key documents and responds "I am surprised it is raining” is not liable for obstruction regardless of whether it is raining. But if the same witness knows where the documents are and yet claims never to have heard of them, that potentially could be material and so could amount to obstruction. See United States v. Williams, 874 F.2d 968, 982 (5th Cir.1989) (affirming obstruction of justice conviction based on repeated false denials of knowledge before a grand jury regarding material matters). The Aguilar standard applies to all conduct under § 1503. The truthfulness or falsity of a statement alone is not dispositive: the relevant inquiry will be whether the statement was material, applying the Aguilar standard.