RAWLINSON, Circuit Judge,
dissenting:
There is no joy in this dissenting judge. The per curiam and concurring opinions have struck out.[1]
Strike One — The per curiam and concurring opinions second-guess the jury’s verdict rather than deferring to it.
I join the principal concurring opinion in its view that context matters in determining whether sufficient evidence supports the conviction in this case. See Kozinski Concurring Opinion, p. 586. A vital part of that context is the evidence before the jury. After all, it is that evidence we examine to determine whether any reasonable juror could have convicted the defendant. In doing so, we view the evidence in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see also United States v. Whittemore, 776 F.3d 1074, 1078 (9th Cir.2015).
Barry Bonds was convicted of one count of obstruction of justice in violation of 18 U.S.C. § 1503. That statute provides for the punishment of “[wjhoever, corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice ...”
*602 At the trial of this matter, the jurors were informed that the charges against Bonds stemmed from his appearance before a grand jury investigating steroid use by athletes. The obstruction of justice count alleged that Bonds gave “material Grand Jury testimony that was intentionally evasive, false, and misleading.” Prior to his grand jury testimony, Bonds was granted immunity from prosecution if he complied with the immunity order. Special Agent Novitsky read the immunity order to the jury. The order provided in pertinent part:
Barry Bonds may be called to testify before the grand jury; and
In the judgment of the United States Attorney, the testimony and other information to be obtained from Barry Bonds is necessary to the public interest; and
It is therefore ordered that Barry Bonds, soon as he may be called, shall testify under oath and provide other information, including documents, in this case and in any further ancillary proceedings.
It is further ordered that the testimony and' other information compelled from-Barry Bonds pursuant to this order ... may not be used against him in any criminal case, except a prosecution for perjury, false declaration, or otherwise failing to comply with this order.
The purpose of immunizing a witness in exchange for his. testimony is to ensure that the witness, freed from the specter of prosecution, will provide complete and truthful testimony. See United States v. Thomas, 612 F.3d 1107,1126 (9th Cir.2010) (observing that “[t]he purpose of the immunity order in [the BALCO] case was to compel the witness to testify truthfully and in good faith before the grand jury to assist it in its investigation”) (emphasis in the original). Giving evasive testimony is inconsistent with the obligation to provide complete and truthful testimony. See United States v. Griffin, 589 F.2d 200, 204 (5th Cir.1979) (“[A]n obstruction of justice results when attempts to gather relevant evidence ... are frustrated by the use of corrupt or false means. The blatantly evasive witness achieves this effect as surely by erecting a screen of feigned forgetfulness as one who burns files or induces a potential witness to absent himself.”) (citation and internal quotation marks omitted). Hence, charges were brought against Bonds for obstruction of justice.
At trial, Special Agent Novitsky described the BALCO Laboratories investigation primarily involving the distribution of anabolic steroids. One of the principal targets of 'the criminal investigation was Greg Anderson, Bonds’ fitness trainer. According to Agent Novitsky, execution of search warrants at BALCO Laboratories produced a “treasure [trove] of drugs and documents indicating usage and distribution [of anabolic steroids] to elite professional athletes.” Authorities also found “physical evidence in terms of drugs that pertained to ... steroid distribution” following a search of Anderson’s residence. Specifically, samples from Anderson’s residence were revealed to be a “designer anabolic steroid.” Authorities also recovered $60,000 from a safe in Anderson’s residence and a bag of syringes in his vehicle.
It was against this backdrop that Bonds was immunized and brought before the grand jury to testify, with the grand jury process considered a continuation of the investigation. Bonds was not a target of the grand jury. Rather, he and other athletes were expected to testify candidly and truthfully to further the investigation into those who were the targets of the grand jury.
*603 Agent Novitsky testified that the inconsistencies between Bonds’ testimony and other evidence before the grand jury regarding the relationship between the athletes and the steroid distributors, including the evasions, required the investigators to conduct additional inquiries that would not have been necessary had Bonds given non-evasive testimony. We cannot say with certainty that no reasonable juror could conclude otherwise. Indeed, drawing all inferences in favor of the government, a reasonable juror could reasonably conclude that Bonds’ evasive testimony diverted the investigation, thereby impeding the administration of justice. See id.
From the inception of this nation’s system of justice, the jury has played an integral role in the administration of justice. See City of Morgantown, W.Va. v. Royal Ins. Co., Ltd., 337 U.S. 254, 258, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949) (articulating that “[tjrial by jury is a vital and cherished right, integral in our judicial system”). We defer to the wisdom of twelve ordinary citizens, selected by the parties, who hear the evidence and follow the instructions given by the judge to reach a verdict. See Long v. Johnson, 736 F.3d 891, 896 (9th Cir.2013) (“Although the evidence presented at trial could yield an alternative inference, we must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts....”) (citation, alteration, and internal quotation marks omitted). Overturning a jury verdict, particularly on a sufficiency of evidence challenge, is rare, as it should be. See United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir.2010) (en banc). This “reviewing court may not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, only whether any rational trier of fact could have made that finding.” Id. (citations and internal quotation marks omitted) (first emphasis added). Regrettably, little consideration is given in the per curiam and concurring opinions to the entirety of the evidence introduced during Bonds’ trial. Indeed, the principal concurring opinion focuses on “the intrinsic capabilities of the statement itself,” as determined on appeal. Kozinski Concurring Opinion, p. 585 (emphasis in the original). However, as discussed below, this analysis applies to false statements rather than to evasive statements. Importing an inapplicable analysis to overturn the jury’s considered verdict appears to be a means of “reaching] the conclusion that seems best” to my concurring colleagues. Blue Cross & Blue Shield v. Rubin, 490 F.3d 718, 724 (9th Cir.2007) (citation omitted). We know that the jury deliberated carefully because it convicted Bonds on only one of four charged counts. See United States v. Plunk, 153 F.3d 1011, 1027 (9th Cir.1998), overruled on other grounds by United States v. Hankey, 203 F.3d 1160, 1169 n. 7 (9th Cir.2000) (observing that “the fact that the jury rendered a mixed verdict ... suggests that it reviewed the evidence rationally and independently”) (citation, alterations, and internal quotation marks omitted). Sufficient evidence supports the jury’s considered verdict, and the verdict warrants deference rather than second-guessing. See Long, 736 F.3d at 896.
When Bonds was asked before the grand jury if Anderson had ever given him anything that required a syringe to inject himself with (a yes or no question), Bonds launched into the following rambling soliloquy:
I’ve only had one doctor touch me. And that’s my only personal doctor. Greg, like I said, we don’t get into each others’ personal lives. We’re friends, but I don’t — we don’t sit around and talk baseball, because he knows I don’t *604 want — don’t come to my house talking baseball. If you want to come to my house and talk about fishing, some other stuff, we’ll be good friends. You come around talking about baseball, you go on. I don’t talk about his business, You know what I mean?
That’s what keeps our friendship. You know, I ’ am sorry, but that — you know, that — I was a celebrity child, not just in baseball by my own instincts. I became a celebrity child with a famous father. I just don’t get into other people’s business because of my father’s situation, you see.
This rambling, non-response answered the following unasked questions:
[Question: How many doctors have touched (treated?) you?]
Answer: I’ve only had one doctor touch me. And that’s my only personal doctor.
[Question: Do you and Greg (Anderson) get into each others’ personal lives?]
Answer: Greg, like I said, we don’t get into each others’ personal lives.
[Question: Do you and Anderson get into each others’ professional lives?]
Answer: We’re friends, but I don’t — we don’t sit around and talk baseball, because he knows I don’t want — don’t come to my house talking baseball. If you want to come to my house and talk about fishing, some other stuff, we’ll be good friends. You come around talking about baseball, you go on. I don’t talk about his business.
[Question: What keeps your friendship with Anderson?]
Answer: That’s [not getting into each other’s personal or professional lives] what keeps our friendship.
[Question: Were you a celebrity child?]
Answer: You know, I am sorry, but that — you know, that — I was a celebrity child, not just in baseball by my own instincts. I became a celebrity child with, a famous father. I just don’t get into other people’s business because of my father’s situation, you see.
Despite these extended . responses to unasked questions, Bonds studiously avoided answering the question that was actually asked: “Did [Anderson] ever give you anything that required a syringe to inject yourself with?”
The jury pondered Bonds’ response in conjunction with Agent Novitsky’s testimony that Bonds’ response required the investigators to search for other evidence that Anderson provided steroids to Bonds. That evidence included testimony from other athletes who acknowledged receiving steroid injections, and from Steve Hoskins, Bonds’ childhood best friend and personal assistant, who had discussions with Bonds about steroid injections and who heard Bonds complain about pain associated with the injections. Hoskins also witnessed Anderson and Bonds enter a bedroom “a couple of times” at Bonds’ Arizona residence, with Anderson holding a needle that Hoskins believed was for steroid injections. Hoskins also recounted an incident when Anderson refused to inject Bonds and Bonds stated that he would “give it to himself.” Hoskins testified that Bonds’ shoe size increased, his glove size changed, and his body got bigger, heavier and “a lot more muscular.” During Hos-kins’ testimony, an audiotape was played that Hoskins made of Anderson discussing providing steroids to Bonds. Hoskins was growing increasingly concerned about Bonds’ steroid use and wanted Bonds’ father to intervene. Because Anderson and Bonds,denied the use of steroids, Hoskins hoped to use the tape to convince Bonds’ father that Hoskins’ concern was justified. *605 The tape was ultimately provided to investigating agents.
A former girlfriend of Bonds testified that Bonds revealed to her that a lump on Bonds’ elbow was caused by steroid use. She also observed Anderson and Bonds regularly enter a bedroom in Bonds’ Arizona residence with a satchel, locking the door after them and remaining inside for approximately twenty minutes. At the same time, the former girlfriend noted significant physical changes in Bonds, including a dramatic increase in size, acne on his upper shoulders and back, rapid hair loss, testicular atrophy, and decreased sexual performance. In addition, Bonds became “increasingly aggressive, irritable, agitated, very impatient, almost violent.” The jury was informed by the Chief Science Officer of the United States Anti-Doping Agency that these are typical side effects of anabolic steroid use.
Finally, Kathy Hoskins, sister to Steve Hoskins, testified that she actually witnessed Anderson administer a shot into Bonds’ “bellybutton” with a syringe, “like the Doctor with a syringe in the bellybutton.” According to Kathy Hoskins, Bonds commented that the injection was “a little some.some, when I go on the road, you know we can’t detect it, you can’t catch it.”
After hearing this evidence, the jury was instructed that to convict Bonds of obstructing justice, the government was required to prove beyond a reasonable doubt:
1. The defendant corruptly, that is, for the purpose of obstructing justice,
2. obstructed, influenced, or impeded, or endeavored to obstruct, influence, or impede the grand jury proceeding in which defendant testified,
3. by knowingly giving material testimony that was intentionally evasive, false or misleading.
The instruction on materiality informed the jury that:
A statement was material if it had a natural tendency to influence or was capable of influencing a decision of the grand jury.
The government alleges that the underlined portion of the following statements constitute material testimony that was intentionally evasive, false or misleading. In order for the defendant to be found guilty of count 5, you must all agree that one or more of the following statements was material and intentionally evasive, false or misleading, with all of you unanimously agreeing as to which statement or statements so qualify!.] '
So instructed, the jury reasonably found that Bonds’ rambling statement was evasive. Under the sufficiency of evidence standard, we draw all inferences in fayor of the government when determining whether any rational juror could have found that Bonds’ evasive testimony materially impeded the grand jury’s performance of its investigatory function. See Griffin, 589 F.2d at 204; see also United States v. Browning, 630 F.2d 694, 699, 701 (10th Cir.1980) (“The ultimate question ... is not whether the defendant told the truth but whether the defendant obstructed or interfered with the process of truthfinding in an investigation ... ”).
Evidence may be sufficient to sustain a conviction under § 1503 even if “it does not exclude every reasonable hypothesis of innocence or is not wholly inconsistent with every conclusion of guilt [because] [a] jury is free to choose among reasonable constructions of the evidence.” United States v. Perkins, 748 F.2d 1519, 1521 (11th Cir.1984) (citation, alterations and internal quotation marks omitted).
The principal concurring opinion acknowledges that the sufficiency of evidence standard of review is a demanding one, but *606 nevertheless elects to apply the standard with “some rigor.” Kozinski Concurring Opinion, p. 586. Without citation to any precedent supporting the addition of “rig- or” to the governing standard of review, that language sounds suspiciously close to a euphemism for second-guessing the jury and “reaching] the conclusion that seems best” to those joining the principal concurrence. Rubin, 490 F.3d at 724 (citation omitted).
As the principal concurring opinion acknowledges, § 1503 sweeps broadly. See Kozinski Concurring Opinion, p. 583.Ap-plying that broad statute to the facts of this case, we must determine whether there was sufficient evidence before the jury that Bonds sought to corruptly impede the work of the grand jury. See id. We are not called upon to determine how far '§ 1503 can be prudentially applied. Nor need we decide whether attorneys at oral argument could be prosecuted for giving evasive answers to questions from members of the oral argument panel. Such a discussion is more akin to resolving a claim that a statute is overbroad, an issue that is not before us in this appeal. In any event, a hypothetical overreach of the statute cannot affect Bonds’ conviction for conduct that falls squarely within the statute. See United States v. Jeter, 775 F.2d 670, 679 (6th Cir.1985) (concluding that 18 U.S.C. § 1503 was not vague or overbroad because “[t]he reach of the statute is clearly limited to such constitutionally unprotected and purportedly illicit activity as that undertaken by [the defendant] ...”).
The jury necessarily found that Bonds’ evasive testimony was material because it was instructed that it had to make that finding before Bonds could be convicted of violating § 1503. Nevertheless, the principal concurring opinion relies upon the “self-evident proposition” that Bonds’ evasive statement “did not have the capacity to divert the government from its investigation ...” Kozinski Concurring Opinion, p. 585. But this conclusion ignores Agent Novitsky’s testimony and the jury’s finding of fact. At a minimum, the jury’s finding is supported by Agent Novitsky’s testimony that Bonds’ evasive responses diverted and impeded the investigation by requiring the investigators to determine whether Bonds was being injected with steroids unknowingly, and whether Bonds’ inconsistent testimony compromised the testimony of the other witnesses. See Perkins, 748 F.2d at 1528 (noting that “marginal” evidence is sufficient to support a conviction for obstruction of justice). The jury chose “among reasonable constructions of the evidence,” and we must respect that choice rather than second-guess it as the concurring opinions do. Id. at 1526 (citation omitted).
Strike Two — The per curiam and concurring opinions disregard precedent that supports upholding the jury’s verdict.
This is not the first time we have considered whether evasive testimony may serve as the basis for an obstruction of justice charge. It may be the first time we have considered the statute as applied to a famous athlete. But that should not be the deciding factor, and there is no other reason to interpret the statute differently in this case.
In United States v. Rasheed, 663 F.2d 843, 851 (9th Cir.1981), we reiterated that the “obstruction of justice statute was designed to proscribe all manner of corrupt methods of obstructing justice.... ” (citing Catrino v. United States, 176 F.2d 884, 887 (9th Cir.1949)). In Rasheed, the defendant had destroyed or concealed subpoenaed documents, and we concluded that the suppression of documentary evidence violated the’obstruction of justice statute as much *607 as the suppression of testimonial evidence. See id. at 852. The defendant argued that when she appeared before the grand jury, she acknowledged that she had not produced all the subpoenaed documents. See id. at 853. She asserted that the government excused her from any further obligation of production, resulting in a lack of sufficient evidence to support a conviction for obstruction of justice. See id. We disagreed, holding that the obstruction of justice was complete when defendant directed destruction or concealment of the documents. See id. We clarified that the actions of the prosecutor “in no way negated] the commission of the crime. At best, [the prosecutor’s] relieving [the defendant] of further production indicates that justice was not, in fact, obstructed. This is not a defense.... ” Id. (emphasis added). We explained that once it was established that the defendant acted with “the intent to obstruct justice and endeavored to do so[,] [t]his is' sufficient for guilt under section 1503----” Id. The same analysis is applicable to Bonds’ evasive testimony. Once Bonds acted with the intent to evade giving the testimony that was compelled by the immunity order, the obstruction of justice offense was complete. See id. Even if Bonds eventually ceased his evasive efforts, his prior intent to obstruct was not negated. See id. Bonds’ evasive testimony could and did interfere with the continued BALCO investigation as reflected in the testimony of Agent Novitsky. See id.; see also Griffin, 589 F.2d at 204 (observing that justice is obstructed “when attempts to gather relevant evidence ... are frustrated by [a] blatantly evasive witness”) (citation and internal quotation marks omitted).
Other circuits agree. See United States v. Cohn, 452 F.2d 881, 884 (2d Cir.1972) (holding that “concealing data recorded in one’s memory” through blatant evasion constitutes obstruction of justice); see also United States v. Langella, 776 F.2d 1078, 1081 (2d Cir.1985) (describing “obviously evasive” answers as “concealment of evidence” within the scope of § 1503). In Perkins, 748 F.2d at 1528, the Eleventh Circuit similarly characterized the defendant’s conduct as obstructive when he gave evasive answers before the grand jury. The Eleventh Circuit described the facts of the case as reflecting that the defendant knew there were irregularities in a certain bank account, that the account was held under a fictitious name, and that the grand jury was seeking to learn the true identity of the account holder. Although the court acknowledged that the government could have questioned the defendant more effectively, it nonetheless held that a reasonable jury could have found that the defendant’s evasive answers were intended to obstruct the grand jury’s investigation. See id.
Ignoring these cases, in my view, creates an unwarranted circuit split and disregards our own precedent without justification.
Strike Three — The concurring opinions rely on precedent more applicable to perjury than to obstruction of justice.
The principal concurring opinion cites this language from Bronston v. United States, 409 U.S. 352, 358, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973): “Under the pressures and tensions of interrogation, it is not uncommon for the most earnest witnesses to give answers that are not entirely responsive.” Kozinski Concurring Opinion, p. 584. However, the cited language does not support a conclusion that there was insufficient evidence to support Bonds’ conviction. In Bronston, the United States Supreme Court addressed the perjury statute, 18 U.S.C. § 1621 (not the obstruction of justice statute, 18 U.S.C. § 1503), and decided the issue of *608 whether a witness may be convicted of perjury for giving an answer that is literally true, but non-responsive to the question asked. See Bronston, 409 U.S. at 352-53, 93 S.Ct. 595. There was absolutely no discussion of evasive testimony or obstruction of justice.
The defendant in Bronston answered several questions posed during adversarial bankruptcy proceedings concerning whether he or his company had Swiss bank accounts. See id. at 354, 93 S.Ct. 595. Although the defendant denied having Swiss bank accounts, there was evidence that the defendant had a personal bank account in a Swiss bank for a prior period of five years. See id. It was undisputed that the defendant’s answers were literally truthful because the defendant did not have a Swiss bank account “at the time of questioning ...” Id. In the context of a prosecution for perjury, the Supreme Court observed that “[t]he cases support petitioner’s position that the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner— so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner’s inquiry.” Id. at 360, 93 S.Ct. 595 (citations omitted) (emphasis added).
There is a notable statutory distinction between the perjury at issue in Bronston and the obstruction of justice at issue in this case. In Bronston, the Supreme Court expressed its unwillingness to expand the perjury statute’s reach to encompass literally truthful answers beyond the limits established by Congress. See id. at 358, 93 S.Ct. 595. In its current form, the perjury statute, 18 U.S.C. § 1621, provides:
Whoever — (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury ...
18 U.S.C. § 1621 (emphases added). Importantly, the perjury statute specifically requires that the defendant have knowledge that the statement itself was not true. See id. The perjury statute is much more forgiving in its knowledge requirement than the elements delineated in 18 U.S.C. § 1503 for obstruction of justice. Notably, 18 U.S.C. § 1503 does not contain any comparable requirement of known falsity. Rather, the obstruction of justice statute merely requires that the defendant “endeavor [] to influence, intimidate, or impede any grand or petit juror ...” 18 U.S.C. § 1503(a) (emphasis added). As the Supreme Court has articulated, “the term ‘endeavor’ ... makes conduct punishable where the defendant acts with an intent to obstruct justice, and in a manner that is likely to obstruct justice, but is foiled in some way....” United States v. Aguilar, 515 U.S. 593, 601-02, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). The obstruction of justice statute does not make a distinction between obstructive statements that are false and those that are evasive and not literally false. The statute requires only that the defendant intend his statement to obstruct justice.
It is questionable whether the “literal truth” underpinnings of Bronston apply *609 outside the confínes of adversarial proceedings where opposing counsel are expected to continuously hone their questions to require definitive answers, and a judge is present to control uncooperative witnesses. In contrast, the grand jury is a non-adversarial, investigatory proceeding with no judge presiding. Moreover, Bonds was given immunity from prosecution in exchange for his testimony. See United States v. Boskic, 545 F.3d 69, 92 (1st Cir.2008) (questioning “whether the literal truth defense as articulated in Bronston is appropriately invoked outside the context of adversary questioning....”).
In Bronston, the defendant’s responses were literally truthful based on the specific questions posed. In other words, the questions in Bronston permitted the defendant to exploit the vagaries of the questions while still providing literally truthful answers. In contrast, the government in this case directly and unambiguously inquired of Bonds, “Did Greg ever give you anything that required a syringe to inject yourself with?” Bonds’ answer that he was a celebrity child was literally truthful in only the most attenuated and superficial manner, as it had nothing to do with the question asked.[2] Unlike in Bronston, there were no nuances to exploit in the direct question posed to Bonds. In United States v. Camper, 384 F.3d 1073, 1076 (9th Cir.2004), we recognized this limitation with respect to Bronston. (“Bronston’s rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked.... ”). Unlike in Bronston, and considering his evasive and misleading answer, the jury could have reasonably concluded that Bonds endeavored to impede the grand jury’s investigation. See United States v. Reilly, 33 F.3d 1396, 1416 (3d Cir.1994) (“Normally, it is for the petit jury to decide which construction the defendant placed on the question....”) (citation omitted); see also Griffin, 589 F.2d at 204 (“[A]n obstruction of justice results when attempts to gather relevant evidence by a judicial body, which is charged by law with the task of investigating and punishing crime, are frustrated by the use of corrupt or false means. The blatantly evasive witness achieves this effect as surely by erecting a screen of feigned forgetfulness as one who burns files or induces a potential witness to absent himself”) (citation and internal quotation marks omitted); United States v. Browning, 630 F.2d 694, 699 (10th Cir.1980) (holding that Bronston’s literal truth defense was inapplicable to an obstruction of justice offense because “Bronston involved a perjury prosecution in which the question was whether the defendant had told the truth. The ultimate question in the case at bar is not whether the defendant told the truth but whether the defendant obstructed or interfered with the process of truthfinding in an investigation in the process of enforcing the law”).
*610 “The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury . paints with a broad brush.... ” United States v. R. Enter., Inc., 498 U.S. 292, 297, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991) (citation omitted). Given the importance of the grand jury’s investigative role, there is no reason to permit an immunized grand jury witness to obstruct the administration of justice by endeavoring to influence or impede the grand jury’s investigation. It would appear that if there was ever a moment for a witness not to engage in obstructive testimony, it would be before a grand jury.
Application of Bronston’s literal truth analysis guts the obstruction of justice provision prohibiting any attempt to “corruptly ... endeavor to influence ... or impede any grand or petit juror ...” 18 U.S.C. § 1503(a). Equating obstruction of justice with perjury actually superimposes the heightened knowledge requirement contained in the perjury statute upon the “endeavor to influence or impede” provisions of the obstruction statute. 18 U.S.C. § 1503(a); cf. 18 U.S.C. § 1621(1). Specifically, Bronston’s requirement that an attorney must ask clarifying questions in order to cure potentially perjurious testimony should not be extended to a witness afforded immunity who attempts to obstruct a grand jury investigation through misleading and evasive answers. Bonds was liable for obstruction of justice at the moment he endeavored to influence or impede the grand jury’s investigation with his misleading and evasive answer to the government’s direct and unambiguous question. See Aguilar, 515 U.S. at 601, 115 S.Ct. 2357 (holding that a defendant may be convicted of obstruction of justice “where the defendant acts with an intent to obstruct justice, but is foiled in some way”). In Aguilar, the Supreme Court delineated the dichotomy between perjury and the intent to obstruct justice:
Were a defendant with the requisite intent to lie to a subpoenaed witness who is ultimately not called to testify, or who testifies but does not transmit the defendant’s version of the story, the defendant has endeavored to obstruct, but has not actually obstructed, justice. Under our approach, a jury could find such defendant guilty.
Id. at 602 As the Supreme Court emphasized, “[t]his is not to say that the defendant’s actions need to be successful; an endeavor suffices ...” Id. at 599, 115 S.Ct. 2357 (citation omitted). Despite the jury’s inability to unanimously find that Bonds committed perjury, the government presented sufficient evidence that Bonds’ evasive answer interfered with the administration of justice. See id.
Once Bonds corruptly endeavored to impede the investigatory function of the grand jury, his crime was complete. See Rasheed, 663 F.2d at 853. Contrary to the views expressed in the, concurring opinions, the obstruction cannot be undone by blaming the prosecutor for failing to prevent the obstruction. See id. (“[The prosecutor’s] actions in no way negate the commission of the crime. At best, his relieving [the defendant] of further production indicates that justice was not, in fact, obstructed. This is not a defense.... ”); see also Perkins, 748 F.2d at 1528 (observing that although the prosecutor could have questioned the witness more effectively, a reasonable jury could have nevertheless found the testimony to be evasive in an effort to obstruct justice).
None of the cases cited in the principal concurring opinion support the notion that there is insufficient evidence to sustain an *611 obstruction of justice conviction in this case, where the jury was instructed on materiality and specifically found that Bonds’ statement obstructed justice. See Thomas, 612 F.3d at 1129 (upholding a conviction for obstruction of justice where the jury found materiality and obstructive statements); cf. Kungys v. United States, 485 U.S. 759, 769-70, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (discussing generally concealment of a material fact in the denaturalization context); United States v. McKenna, 327 F.3d 830, 840 (9th Cir.2003) (discussing materiality generally in the perjury context); Weinstock v. United States, 231 F.2d 699, 701 (D.C.Cir.1956) (discussing materiality in the false statement context); United States v. Serv. Deli Inc., 151 F.3d 938, 941 (9th Cir.1998) (same); United States v. McBane, 433 F.3d 344, 350-51 (3d Cir.2005) (same); United States v. Rigas, 490 F.3d 208, 231 (2d Cir.2007) (discussing materiality generally in the bank fraud context). To the extent that the principal concurring opinion cites these cases for the proposition that the grand jury function must be subject to influence for the obstruction conviction to stand, I disagree. See, e.g. Aguilar, 515 U.S. at 601, 115 S.Ct. 2357 (explaining that a defendant may be convicted of obstruction of justice even if his attempt to obstruct is foiled). Moreover, the jury in this case was instructed on materiality and found Bonds’ statement obstructive pursuant to that instruction. Absent a complete superimposition of the “literally true” Bronston analysis, the cases cited in the principal concurring opinion simply do not provide a basis for reversing Bonds’ conviction.
Final Pitch
Barry Bonds received a grant of immunity in exchange for his truthful and candid testimony before the grand jury. Rather than aiding the grand jury in its investigatory quest, Bonds elected to obstruct the grand jury process by giving evasive testimony. There is sufficient evidence to support his conviction because the jury was instructed that it must find his evasive testimony to be material before rendering a guilty verdict. In my view, the per curiam and concurring opinions impermissibly second-guess the jury verdict,. disregard our precedent, create an unwarranted circuit split and import inapplicable principles from Bronston into the obstruction of justice analysis. I cry foul.

. Apologies to Ernest Lawrence Thayer, Casey at the Bat (1888) ("But there is no joy in Mudville-Mighty Casey has struck out.").

. Bonds’ answer to the government’s question as to whether Anderson “ever gave [him] anything that required a syringe to inject [himself] with’’ was not limited to Bonds’ answer that he was a celebrity child. Although it may be literally true that Bonds was a celebrity child, his answer was also coupled with the statement that he “just didn’t get into other people’s business because of [his] father’s situation ...” To the extent the answer even addressed the government's direct question, it implied that, because he was a celebrity child, Bonds did not interject himself “into other people’s business” and did not receive anything related to steroids from Anderson. The jury could have reasonably concluded that the last part of Bonds’ answer was an attempt to impede the grand jury’s investigation by deflecting the question and evasively implying that, contrary to the evidence presented at trial, he did not know about Anderson's steroid operation because he did not get involved in the business of his friends.